UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| MARK WHITEHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 3:20-CV-736-DJH |
| | ) | |
| GARDA CL CENTRAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. NATURE OF THE CASE**

1. This is an action brought by Plaintiff, Mark Whitehead ("Whitehead"), by counsel, against Defendant, Garda CL Central, Inc. ("Garda"), alleging failure to pay overtime wages in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* and Kentucky Revised Statutes 337.020 to 337.285.

**II. PARTIES**

2. Whitehead, at all times relevant to this litigation, resided within the geographical boundaries of the Western District of Kentucky.

3. Defendant is a corporation which, at all times relevant to this action, conducted business in the Western District of Kentucky.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; and 29 U.S.C. §§ 1132(e).

5. Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

6. Whitehead is an "employee" as that term is defined by 29 U.S.C. §203(e)(1).

7. Whitehead's state law claim arises from the same common nucleus of operative facts as his federal law claims and all of his claims form a single case and controversy under Article III of the United States Constitution.

8. All events, transactions, and occurrences concerning this case having arisen in the geographical environs of the Western District of Kentucky, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

9. Whitehead was hired by Defendant in November of 2017 at its Louisville, Kentucky branch located at 1050 South 9th Street, Louisville, Kentucky 40203.

10. At all times during his employment with the Defendant, Whitehead met or exceeded all legitimate performance expectations

11. Throughout his employment with the Defendant, Whitehead was under the supervision of Lu Lopez.

12. Initially, Mr. Whitehead was placed in the position of Driver/Messenger Transportation with an hourly wage of $13.75 per hour.

13. In or around May 2018, Whitehead was promoted to the position of Crew Leader with an hourly wage of $15.75 per hour. He remained in that same position until his separation from the Defendant in February 2020.

14. Whitehead was employed with Defendant without issue until approximately October of 2019.

15. In October of 2019 Whitehead was notified that an Order for a Wage Garnishment against him had been received by Defendant pertaining to a civil judgment. At that point his wages began being garnished to satisfy that judgment.

16. Upon learning of this, Whitehead, who in the past had not done so, began to carefully examine his current pay stubs to understand the amount that was being garnished.

17. In doing so, Whitehead noted several issues contained within his pay stubs, which gave him cause to meticulously review all prior pay stubs.

18. Whitehead found that there were several causes for concern.

19. All issues that Whitehead found involved the input of his hours worked, and the rate of pay for which he was to receive.

20. The input of such information, for payroll purposes, was completed by Lopez, who had total control over the entry and modifications of the same.

21. The first issue was regarding his regular pay rate. As stated above, Whitehead was promoted to a Crew Leader position in or around May of 2018, which

raised his rate of pay from $13.75 per hour to $15.75 per hour. Whitehead's pay stubs, however, did not reflect his increased rate of pay for all hours worked.

22.     Whitehead's pay stubs list all hours worked and reflects a pay rate of $13.75 per hour for each of those hours. The pay stubs then separately list a number of hours for which he was paid as a Crew Leader with an additional $2.00 per hour, indicating that he was paid the Crew Leader rate for only a portion of the hours for which he worked.

23.     Whitehead, in being promoted to a Crew Leader, was to be paid the appropriate rate of $15.75 for each hour worked.

24.     Once promoted to that position, Whitehead was no longer in the position of a Driver/Messenger, nor did he switch back and forth between the two positions, or work in both roles.

25.     The duties that Whitehead was tasked with remained the same for every hour he worked, with no variation to indicate that he was alternating between the two positions.

26.     Further, there is nothing to indicate how Lopez determined the differentiation in those two positions; the hours worked in each position; and consequently, the pay rates allocated to each of the two positions. The allocation of the hours worked, and thus the pay rates, between the two positions is abstruse and indiscriminate.

27. Given there was no differentiation in Whitehead's job related tasks as a Crew Leader from day to day, or hour to hour, which could account for him being paid the rate of a Driver/Messenger, his standard rate of pay was to be $15.75 per hour for each hour he worked (notwithstanding overtime pay).

28. Defendant, in violation of KRS 337.020, failed to pay Whitehead the correct rate of wages, resulting in a substantial amount of unpaid earnings, of which, he is owed.

29. Further, Defendant's adverse actions in failing to pay Whitehead his earned wages resulted in a breach of contract; conversion; and unjust enrichment.

30. The second issue that Whitehead found in the review of his pay stubs concerns overtime pay rates.

31. Throughout his employment with the Defendant, Whitehead frequently worked hours in excess of the standard forty hours per week, often up to and over fifty hours per week.

32. While his pay stubs do reflect that such overtime was worked, Whitehead was not appropriately paid for all of it.

33. For pay periods in which Whitehead worked overtime, his pay stubs contain two different entries for overtime; one labeled "Overtime" and the second labeled "Straight Overtime."

34. In the weeks during which Whitehead worked more than forty hours, the excess hours between forty and fifty were entered as "Straight Overtime." For those

hours worked he did not receive the overtime pay rate, but instead received his regular pay rate (whether it be the incorrect rate of $13.75 per hour or the correct rate of $15.75 per hour).

35. Only during the weeks in which he worked more than fifty hours did Whitehead receive the correct overtime pay rate. Any hours worked above fifty were entered as "Overtime," for which he was paid the appropriate overtime rate of time and a half his regular rate (again, whether it was calculated based on the incorrect rate of $13.75 per hour or calculated based on the correct rate of $15.75 per hour).

36. The United States Fair Labor Standards Act ("FLSA") sets forth the standards for various employee related issues including, but not limited to, fair pay.

37. While the standards set for by the FLSA differentiates between hourly employees and salaried employees, it is clear that the Act requires that hourly employees be paid overtime rates for any hours worked above the standard forty hours in any given week.

38. Whitehead was unquestionably an hourly employee; therefore, he was entitled to overtime pay rates for any hours that he worked in excess of forty during any given week.

39. Defendant blatantly violated the FLSA in failing to pay Whitehead the proper overtime pay rate for the hours that he worked between forty and fifty each week.

40. Defendant's violation of the FLSA results in additional and substantial unpaid wages, of which, Whitehead is owed.

41. Upon realizing that Defendant had failed to pay him correctly for both his regular hours and overtime hours worked, Whitehead took his concerns to his supervisor, Lopez, and informed him that he would need to be compensated for all earnings that Defendant had failed to pay him.

42. Lopez was blatantly dismissive of Whitehead's concerns, and, in his own words, informed Whitehead that he would get whatever he (Lopez) gave him.

43. Lopez's actions in addressing the matter were not only undoubtedly inappropriate, but erroneous.

44. When Lopez failed to investigate or, in any way, address the matter of Whitehead's concerns regarding his overtime pay, Whitehead attempted to resolve his concerns with Human Resources.

45. Whitehead emailed several individuals who worked within the Human Resources Department to inquire about the discrepancies in both his regular and overtime pay rates.

46. Whitehead never received any type of response or resolution.

47. In or around November 2019, Whitehead was involved in an auto accident while driving a vehicle owned by Defendant.

48. Whitehead was operating the vehicle in the regular scope of his employment.

49. In the police report produced at the time of the accident, Whitehead was noted as the "at fault" party.

50. In or around February 2020, shortly after reporting the issues concerning his unpaid wages, Whitehead's employment with Defendant was terminated.

51. Defendant cited the incident that occurred in or around November 2019 as the reason for Whitehead's termination.

52. Defendant's reason for terminating Whitehead is merely pretext for their retaliation against him because Whitehead reported that Lopez (acting on behalf of the Defendant) had failed to pay him correctly, and that he was owed unpaid wages.

53. Other employees of Defendant were also often involved in accidents while in Defendant's vehicles, without having their employment terminated.

54. Defendant's decision to terminate Whitehead was, unequivocally, an act of retaliation.

55. Defendant, in violation of KRS 337.055, failed to pay Whitehead within fourteen (14) days following his termination or in the next normal payroll

## V. LEGAL ALLEGATIONS

### Count I: KRS 337.020 - Failure to Timely Pay Wages

56. Whitehead hereby incorporates paragraphs one (1) through fifty-five (55) of his Complaint as if the same were set forth at length herein.

57. Defendant failed to pay Whitehead all wages and salary earned to a day not more than eighteen (18) days prior to the date of that payment.

58. Defendant failed to pay Whitehead all wages and salary earned upon six (6) days demand.

59. Defendant violated KRS 337.020.

60. Defendant's violations of KRS 337.020 were intentional and willful.

61. Whitehead has suffered damages as a result of the Defendant's failure to timely pay him the correct wages.

62. Whitehead is entitled to recover from Defendant all compensation which he earned, as well as liquidated damages pursuant and attorney fees pursuant to KRS 337.385.

### Count II: KRS 337.055 - Failure to Timely Pay Wages

63. Whitehead hereby incorporates paragraphs one (1) through sixty-two (62) of his Complaint as if the same were set forth at length herein.

64. Whitehead was terminated on in or around February 2020.

65. Defendant failed to pay Whitehead within fourteen (14) days following his termination or in the next normal payroll.

66. Defendant violated KRS 337.055.

67. Defendant's violations of KRS 337.055 were intentional and willful.

68. Whitehead has suffered damages as a result of the Defendant's failure to pay him within fourteen (14) days following his termination or in the next normal payroll.

69. Whitehead is entitled to recover from Defendant all compensation which he earned, as well as liquidated damages pursuant and attorney fees pursuant to KRS 337.385.

### COUNT III-FAILURE TO PAY OVERTIME WAGES

70. Whitehead hereby incorporates paragraphs one (1) through sixty-nine (69) of his Complaint as if the same were set forth at length herein.

71. The Defendant failed to pay the appropriate overtime wages or compensation due to Plaintiff on the next usual and regular day for payment of wages, or the regular pay day for the pay period during his employment and on the date in which his separation from employment occurred.

72. Defendant's actions violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* and KRS 337.285.

73. Whitehead has suffered damages as a result of the Defendant's failure to pay him the correct overtime wages.

74. Whitehead is entitled to recover from Defendant all compensation which he earned, as well as liquidated damages and attorney fees pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* and KRS 337.385.

### COUNT IV- UNJUST ENRICHMENT

75. Whitehead hereby incorporates paragraphs one (1) through seventy-four (74) of his Complaint as if the same were set forth at length herein.

76. Defendant has failed and/or refused to pay wages due to Whitehead for his labor and services rendered during his tenure as an employee of the Defendant.

77. Defendant has been unjustly enriched by keeping funds which are the property of Whitehead.

### COUNT V- CONVERSION

78. Whitehead hereby incorporates paragraphs one (1) through seventy-eight (78) of his Complaint as if the same were set forth at length herein.

79. Defendant knowingly or intentionally exerted unauthorized control over Whitehead's wages.

80. Whitehead has suffered damages as a result of the Defendant's actions.

### COUNT VI – BREACH OF CONTRACT

81. Whitehead hereby incorporates by reference paragraphs one (1) through eighty (80) of his Complaint as if the same were set forth at length herein.

82. Pursuant to the terms of the parties' employment contract, Defendant was to pay to Whitehead the specific hourly rate assigned to the job title/role of Crew Leader for all hours worked, as well as one and a half (1.5) times of that specific hourly rate for all hours worked in excess of forty each week.

83. Defendant breached the employment contract with Whitehead by refusing to pay that specific hourly rate for all hours of which he worked.

84. Defendant further breached the employment contract with Whitehead by refusing to pay one and a half (1.5) times of that specific hourly rate for all hours worked in excess of forty each week.

85. Defendant's actions were intentional, malicious, and done with reckless disregard for Whitehead's rights within the employment contract.

86. Plaintiff has suffered damages as a result of Defendant's actions.

### COUNT VII- RETALIATION

87. Whitehead hereby incorporates paragraphs one (1) through eighty-six (86) of his Complaint as if the same were set forth at length herein.

88. Defendant, in terminating his employment, acted in retaliation against Whitehead when he reported the Defendant's violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Â§ 201 *et seq.* and KRS 337.020 to 337.285, which had resulted in discrepancies in both his regular and overtime pay rates.

89. Plaintiff has suffered damages as a result of the Defendant's actions.

### VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Mark Whitehead, by counsel, respectfully requests that this Court find for Plaintiff and order as follows:

1. Payment to Plaintiff of all unpaid wages and overtime compensation;

2. Payment to Plaintiff of liquidated damages for all unpaid wages and overtime compensation;

3. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Pay Plaintiff punitive damages for the Defendant's failures to pay and/or malice and willful actions;

5. Order injunctive relief sufficient to insure that Defendant ceases and desists from further unlawful employment practices in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Â§ 201 *et seq.* and KRS 337.020 to 337.285;

6. Order Defendant to pay pre-judgment and post-judgment interest to Plaintiffs;

7. Order Defendant to pay Plaintiff's costs and attorney fees; and

8. Order such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Jennifer C. Smith_____
Jennifer C. Smith
Andrew Dutkanych III
BIESECKER DUTKANYCH & MACER, LLC
101 N. Seventh Street
Louisville, Kentucky 40204
Telephone:   (502) 561-3443
Facsimile:    (812) 424-1005
Email: jcornellsmith@bdlegal.com
Email: ad@bdlegal.com

*Attorneys for Plaintiff, Mark Whitehead*

## **DEMAND FOR JURY TRIAL**

The Plaintiff, Mark Whitehead, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

/s/ Jennifer C. Smith_____
Jennifer C. Smith
Andrew Dutkanych III
BIESECKER DUTKANYCH & MACER, LLC
101 N. Seventh Street
Louisville, Kentucky 40204
Telephone:   (502) 561-3443
Facsimile:    (812) 424-1005
Email: jcornellsmith@bdlegal.com

*Attorneys for Plaintiff, Mark Whitehead*